UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VON METRIZ LEWIS                                    CIVIL ACTION

v.                                                 NO. 18-5013

21ST CENTURY
INSURANCE COMPANY                                  SECTION "F"

ORDER AND REASONS

Before the Court is the defendant's motion for partial summary
judgment that California law governs the plaintiff's uninsured
motorist claim, and, therefore, the plaintiff's claims for
statutory penalties and attorney's fees under La. R.S. §§ 22:1892
and/or 22:1973 must be dismissed with prejudice.  For the reasons
that follow, the motion is DENIED.

**Background**

This lawsuit arises from a hit-and-run motor vehicle accident
and the victim's efforts to recover from her insurance carrier.

Von Metriz Lewis is a retired nurse who spends part of the
year at her residence in Louisiana and the other part at her home
in California where her daughter continues to reside.  On November
9, 2017, Lewis was driving her 2015 Jeep Wrangler in New Orleans
when a sedan violently struck her vehicle, causing it to flip onto
the driver's side.  Upon impact, the driver of the sedan fled the
scene.  Immediately thereafter, Lewis was transported to the
emergency room by ambulance where she was treated for head, neck,

1

and back pain and admitted for overnight observation.  She also was required to wear a cervical collar for several months and remains under the care of two treating physicians in New Orleans.

Following the accident, Lewis submitted a claim to 21st Century Insurance Company for uninsured motorist ("UM") benefits under her personal automobile policy.  In hopes of resolving the matter, Lewis presented 21st Century with an Offer of Settlement and Satisfactory Proof of Loss, but the offer was rejected. Believing the hit-and-run driver to be at fault, and believing that 21st Century had acted in bad faith in handling her claim, Lewis filed suit in Louisiana state court on April 3, 2018 to recover damages resulting from the accident, as well as statutory penalties and attorney's fees.  21st Century timely removed the action to this Court, invoking the Court's diversity jurisdiction.

Several months later, Lewis presented 21st Century with a second Offer of Settlement and Satisfactory Proof of Loss, in which she alleged that the value of her damages exceeds the policy limits of $100,000.  21st Century, through counsel, rejected that offer, stating:

> [G]iven that this is a California policy,
> California law will apply.  And under these
> circumstances, a tender is not required and
> further investigation is necessary.  Once
> additional discovery is completed, 21st
> Century Insurance Company will reevaluate
> their position regarding your client's claims.

21st Century now moves for partial summary judgment that California law governs the plaintiff's UM claim, such that her claims for statutory penalties and attorney's fees under La. R.S. §§ 22:1892 and/or 22:1973 must be dismissed with prejudice.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent

opposing evidence. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. <u>Anderson</u>, 477 U.S. at 249 (citations omitted); <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Antoine v. First Student, Inc.</u>, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

## II.

### *A.*

This Court, sitting in diversity, must apply Louisiana's choice-of-law rules in determining which state's substantive law governs this dispute. See Abraham v. State Farm Mutual Auto Ins. Co., 465 F.3d 609, 611 (5th Cir. 2006). The Louisiana Supreme Court has offered guidance as to the appropriate choice-of-law analysis for insurance disputes arising out of automobile accidents and concerning contacts with more than one state. In Champagne v. Ward, Louisiana's high court resolved a circuit split amongst the state's appellate courts, holding that Louisiana's uninsured/underinsured motorist law does not *automatically* apply to accidents occurring in Louisiana and involving a Louisiana resident. 03-3211 (La. 1/19/05); 893 So. 2d 773. Rather, the Champagne court determined, where the uninsured motorist laws of Louisiana and the foreign state differ, a choice-of-law analysis as codified in the Louisiana Civil Code must be performed. Id. at 786.

### *B.*

In this case, it is undisputed that the uninsured motorist laws of Louisiana and California differ in significant respects. Louisiana law requires an insurer to tender the undisputed amount of a claim within a fixed period of time and permits penalties and attorney's fees in the absence of tender, while California law

does not require tender and mandates binding arbitration of disputes concerning the uninsured driver's liability and the extent of the resulting damages. Compare McDill v. Utica Mutual Ins. Co., 475 So. 2d 1085, 1091 (La. 1985) ("If . . . the insured has made a showing that the insurer will be liable for some general damages, the insurer must tender the reasonable amount which is due.") with Rangel v. Interinsurance Exch., 842 P.2d 82, 91 (Cal. 1992) ("[P]ayment may be delayed until the amount of the loss payable has been determined in arbitration.").

Under Louisiana law, La. R.S. § 22:1892(B)(1) and La. R.S. § 22:1973(B)(5) and (C) provide for penalties against an insurer whose failure to pay a claim after receiving satisfactory proof of loss is "arbitrary, capricious, or without probable cause." Although the statutes differ in the time periods allowed for payment, both are "penal in nature and must be strictly construed." Reed v. State Farm Mut. Auto Ins. Co., 2003-0107 (La. 10/21/03), 857 So. 2d 1012, 1020. Upon the insurer's receipt of satisfactory proof of loss, La. R.S. § 22:1892 requires payment within thirty days, subject to a mandatory penalty of fifty percent of the amount due, as well as reasonable attorney's fees and costs, whereas La. R.S. § 22:1973(B)(5) and (C) requires payment within sixty days, subject to a discretionary penalty of no more than two times the damages sustained. In the context of an uninsured motorist claim, "satisfactory proof of loss" constitutes sufficient facts to fully

apprise the insurer: (1) that "the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) [of] the extent of those damages." McDill, 475 So. 2d at 1089. Once these criteria are met, "the insurer must tender the reasonable amount which is due," even if "the insured in unable to prove the *exact* extent of his general damages." Id. at 1091.

California law, on the other hand, does not require tender when the insurer and insured cannot agree on the extent of the damages. See Aronson v. State Farm Ins. Co., No. 99-4074, 2000 U.S. Dist. LEXIS 6976, at *25 (C.D. Cal. May 15, 2000); Bouton (Lloyd) v. USAA Casualty Ins. Co. (2008) 43 Cal. 4th 1190, 1193. Title 10, California Code of Regulations, Section 2695.7(h) provides, in part, that an insurer, "[u]pon acceptance of the claim in whole or in part . . . shall immediately, but in no event more than thirty (30) calendar days later, tender payment or otherwise take action to perform its claim obligation." However, California Insurance Code § 11580.2(f) clarifies that "the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by **arbitration**." (emphasis added). Section 11580.2(i), in turn, provides:

(1) **No cause of action shall accrue to the insured** under any policy or endorsement provision issued pursuant to this section **unless one of the following actions have been taken within two years** from the date of the accident:

    (A) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction.

    (B) Agreement as to the amount due under the policy has been concluded.

    (C) The insured has formally instituted arbitration proceedings by notifying the insurer in writing sent by certified mail, return receipt requested. Notice shall be sent to the insurer or to the agent for process designated by the insurer filed with the department.

Cal. Ins. Code § 11580.2(i) (emphasis added).[1]

---

[1] The 21st Century policy involved in this case draws upon language from the California Insurance Code but bars coverage where certain action is not taken within *one year* from the date of the accident. This policy provides, in part:

> Under Coverage D [Damages for Bodily Injury Caused by Uninsured/Underinsured Motor Vehicles], **this policy does not apply unless within one year** from the date of the *accident* wherein *bodily injury* is sustained agreement as to the amount due under this part has been concluded or the *person* insured under this part or the legal representative of said *person* insured has formally instituted arbitration proceedings by notifying *us* in writing by certified mail, return receipt requested, or has commenced action for *bodily injury* in a court of competent jurisdiction against the uninsured motorist. This exclusion does not apply to any loss involving an *underinsured motor vehicle*.

Emphasis added.

8

In interpreting the uninsured motorist coverage regulatory framework, California courts have emphasized that "neither the Insurance Code nor regulations adopted under its authority provide a private right of action." See Rattan v. United Services Auto. Ass'n (2000) 84 Cal. App. 4th 715, 724. In other words, a violation of an insurance regulation is not "per se a breach of contract or an act of bad faith" but rather, "only evidence of a breach or bad faith." See id. California jurisprudence has also recognized that an insurer "does not commit bad faith when it cannot reach an agreement with its insured, and resolves the disagreement through arbitration." Aronson, 2000 U.S. Dist. LEXIS 6976, at *25; see also Rangel v. Interinsurance Exch., 842 P.2d 82, 91 (Cal. 1992) ("[B]ecause the loss payable is subject to arbitration under the policy, payment may be delayed until the amount of the loss payable has been determined in arbitration."). Because the two states' laws differ, this Court must perform a choice-of-law analysis. See Champagne, 893 So. 2d at 786.

III.

A.

The Louisiana choice-of-law rules applicable to an insurance policy dispute concerning multiple states, as here, are found in Louisiana Civil Code articles 3515 and 3517. Id. Pursuant to those rules, "the law of the state whose policies would be most

seriously impaired if its law were not applied to th[e] issue"
governs. La. Civ. Code arts. 3515, 3537. Article 3515, which
pertains to any case involving multi-state contacts, provides a
list of factors to be considered in determining which state's
policies would be most seriously impaired:

> (1) the relationship of each state to the
> parties and the dispute; and (2) the policies
> and needs of the interstate and international
> systems, including the policies of upholding
> the justified expectations of parties and of
> minimizing the adverse consequences that might
> follow from subjecting a party to the law of
> more than one state.

La. Civ. Code art. 3515. Article 3537, in turn, calls for
consideration of additional factors where a case involves an issue
of conventional obligations:

> (1) the pertinent contacts of each state to
> the parties and the transaction, including the
> place of negotiation, formation, and
> performance of the contract, the location of
> the object of the contract, and the place of
> domicile, habitual residence, or business of
> the parties; (2) the nature, type, and purpose
> of the contract; and (3) the policies referred
> to in Article 3515, as well as the policies of
> facilitating the orderly planning of
> transactions, of promoting multistate
> commercial intercourse, and of protecting one
> party from undue imposition by the other.

La. Civ. Code art. 3537.

In applying these principles, the Louisiana Supreme Court, in
Champagne v. Ward, held that Mississippi law governed the
interpretation of an uninsured/underinsured motorist policy of a

Mississippi resident who was involved in an automobile accident in Louisiana. 893 So. 2d at 789. There, the Mississippi resident's policy was negotiated and issued in Mississippi, while the underinsured driver, a Louisiana resident, carried automobile insurance issued in Louisiana. Id. Identifying the competing policies involved for each state, the Louisiana Supreme Court explained that Louisiana's uninsured motorist legislation seeks to "promote full recovery for innocent tort victims," while "Mississippi has an interest in the regulation of its insurance industry and in the contractual obligations that are inherent parts thereof." Id. at 788. Although applying Mississippi law would preclude the plaintiff from fully recovering for his injuries, the Court noted that application of Louisiana law would abrogate a Mississippi contract for which the plaintiff had paid premiums based on the application of Mississippi law. Id. Accordingly, the Court reasoned, under the facts of that case, "Mississippi ha[d] a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana ha[d] in providing an insurance remedy to an out-of-state resident who was injured while transitorily within the borders of Louisiana." Id.

Applying the framework set forth in Champagne to a slightly different set of facts, the U.S. Fifth Circuit Court of Appeals reached a similar conclusion in Abraham v. State Farm Mutual Auto Ins. Co., 465 F.3d 609, 611 (5th Cir. 2006). There, the Court

held that Mississippi law governed the plaintiff's bad faith uninsured motorist claim resulting from an automobile accident that occurred in Louisiana. Id. at 614. Like the plaintiff in Champagne, the Abraham accident victim was a Mississippi resident who negotiated his insurance policy in Mississippi and purportedly garaged his vehicle there. Id. at 612-13. However, he was *also* a resident of Louisiana and had received his medical treatment primarily in Louisiana. Id. at 613. Although the Fifth Circuit recognized that the plaintiff's Louisiana residence was "a factor to be considered in making the choice-of-law determination," it noted that residence "is not determinative." Id. The Court also emphasized that, under the facts before it, Louisiana's policy interest in promoting the recovery of tort victims would not be impaired to the extent it was affected in Champagne:

> While the decision in Champagne left the plaintiff with no redress for his injuries, application of Mississippi law in this case only forecloses Abraham's ability to recover a statutory penalty and attorney's fees for his bad faith (since State Farm has already paid him the UM policy limit).

Id. at 613-14. As to Mississippi, the Court noted that the foreign state's relationship to the dispute and interest in upholding the expectations of parties to Mississippi contracts was as important as in Champagne. Id. at 614. Accordingly, the Fifth Circuit concluded:

> Mississippi--the state where the insurance
> policy was negotiated and formed, where the
> insured vehicle was licensed and garaged, and
> where Abraham had dual citizenship--bears the
> closer relationship to the parties and the
> dispute. Further, its public policy interest
> in the uniform application of its insurance
> laws, considered in light of those factors, is
> more substantial than Louisiana's competing
> interests as applied in this case.

Id. at 614.

*B.*

In this case, 21st Century contends that California's contacts to the parties and the dispute predominate to such an extent that California's policies would be most seriously impaired if its law were not applied. Lewis counters that Louisiana's contacts are more compelling, emphasizing that she is a Louisiana resident, who was not "transitorily within the borders of Louisiana" at the time of the accident.

In support of its motion for partial summary judgment, 21st Century submits a certified copy of the personal automobile insurance policy issued to Lewis; the affidavit of Amy Dartez, a Special Claims Representative with Farmers Insurance Exchange; and the deposition testimony of Ms. Lewis. In her affidavit, Amy Dartez attests that, through her position, she has access to the business and policy records of 21st Century, a company partly owned by Farmers Insurance Exchange. Having conducted a search of all records and documents in 21st Century's possession involving policy

number 1118 39 98, issued to Von O. Metriz R. Lewis, Dartez attests

as follows:

- On July 12, 2017, 21st Century Insurance Company issued to Von O Metriz R Lewis a California renewal policy of personal automobile insurance, number 1118 39 98, covering three California registered vehicles to be garaged at 5211 Angeles Vista Blvd., View Park, CA 90043-1613. Included as one of the three listed vehicles was a California registered 2015 Jeep Wrangler Sport bearing VIN 1C4AJWAG4FL747723, which was involved in the accident which forms the basis of the captioned lawsuit.

- The Lewis policy issued by 21st Century Insurance Company had the following effective dates of coverage: July 12, 2017 to January 12, 2018. The 21st Century Insurance Company policy issued to Von O Metriz R Lewis was delivered to 5211 Angeles Vista Blvd., View Park, CA 90043-1613. The policy issued to Von O Metriz R Lewis was issued as a California personal auto policy. The policy premiums charged to Von O Metriz R Lewis reflect that the policy was to cover vehicles garaged in View Park, California 90043.

- At no time prior to the accident which forms the basis of this litigation was 21st Century Insurance Company made aware that Von O Metriz R Lewis resided in the State of Louisiana and garaged her 2015 Jeep Wrangler Sport, bearing VIN 1C4AJWAG4FL747723, in New Orleans, Louisiana. Had this information been provided to 21st Century Insurance Company, the policy at issue would not have and could not have been issued to her. On July 12, 2017, 21st Century Insurance Company was not authorized to do, nor was it doing business in the State of Louisiana.

The certified copy of the 21st Century auto policy further

reveals that Lewis listed three vehicles on the declaration page:

(1) a 2009 Smart Fortwo Pure/Passion; (2) a 2014 Mercedes Benz CLA

250; and (3) a 2015 Jeep Wrangler Sport. Beside each vehicle

description appears that vehicle's mileage, as well as the zip

code of "90043." The declaration page also sets forth uninsured motorist bodily injury coverage with a $100,000 per person and $300,000 per accident limit of liability, as well as uninsured motorist property damage coverage with a deductible waiver.

Finally, 21st Century points to the deposition testimony of Von Metriz Lewis, dated October 2, 2018, in which she testifies that:

- She owns a home located at 5211 Angeles Vista Boulevard in View Park, California 99043.

- The policy she references in this lawsuit was mailed to her California address.

- Her 2015 Jeep Wrangler was registered in California.

- She has resided in New Orleans since 2009 or 2010.

- She never informed 21st Century that she moved to Louisiana.

- She possesses a California driver's license.

Ms. Lewis, in opposition, asserts her strong ties with Louisiana. However, she submits no affidavit or deposition testimony in support of her respective contentions.

*C.*

To determine which state's policies would be most seriously impaired if its law were not applied, the Court must first identify each state's contacts to the dispute and the parties. A review of the summary judgment factual record reveals the following

California contacts: (1) Ms. Lewis obtained a personal automobile insurance policy from 21st Century, naming her as the policyholder and listing her California home address; (2) the policy was delivered to Ms. Lewis's California address; (3) at the time of the accident on November 9, 2017, Ms. Lewis was driving a 2015 Jeep Wrangler, which was registered in California; (4) the policy suggests that the Jeep Wrangler is principally garaged in California (per the California zip code printed beside the vehicle's description); (5) Ms. Lewis still owns the home in California where the policy was delivered, and her daughter currently resides in that home; (6) Ms. Lewis has a California driver's license; and (7) Ms. Lewis never informed 21st Century that she had moved to Louisiana. With respect to Louisiana contacts, the evidence establishes that: (1) Ms. Lewis moved to Louisiana in 2009 or 2010; (2) Ms. Lewis owns rental property and a home in New Orleans; (3) the accident occurred in Louisiana; (4) Ms. Lewis was hospitalized in Louisiana and has received most of her medical treatment there; and (5) suit was filed in Louisiana.

These contacts must be considered in light of the competing public policies and interests of each state. The purpose of Louisiana's UM legislation is to promote full recovery for innocent tort victims. Champagne, 893 So. 2d at 788. Factors supporting Louisiana's strong interest in promoting full recovery of innocent automobile accident victims include: (1) the economic interests

involved, including the costs of medical care; (2) the involvement of the Department of Public Safety and Corrections and the judicial system; and (3) the fact that the issuing states of insurance policies often have credit and reduction provisions in their UM coverage, which reduces the limits and prevents full recovery by the innocent victims. Id. (citing Zuviceh v. Nationwide Ins. Co., 2000-0073 (La. App. 1 Cir. 5/11/01); 786 So. 2d 340, 345). On the other hand, California has an interest in the regulation of its insurance industry and in the contractual obligations inherently associated with that trade. Id. ("The integrity of the contract is a substantial and real interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose.").

21st Century contends that, based on the facts of this case, California has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in promoting the full recovery of innocent accident victims. To support this proposition, 21st Century submits that the facts of this case are nearly identical to those presented in Abraham, where the Fifth Circuit, performing a Louisiana choice-of-law analysis, applied Mississippi law to a dual resident's uninsured motorist claim following an accident that occurred in Louisiana. 465 F.3d at 613-14. 21st Century also points to

factually similar Louisiana state and federal district court cases, in which the law of the state in which the insurance policy was issued was found to control. See Collins v. Downes, 11-1124 (La. App. 4 Cir. 1/25/12); 83 So. 3d 1177 (applying Ohio law where plaintiff, a Louisiana resident, was a permissive user of a vehicle that was owned by a dual Ohio/Louisiana resident and covered by an Ohio policy); Dickerson v. Progressive Express Ins. Co., No. 07-8153, 2009 WL 117006 (E.D. La. Jan. 14, 2009) (Africk, J.) (applying Tennessee law where plaintiff, a dual Tennessee/Louisiana resident, was a permissive user of a vehicle owned by a Tennessee resident and covered by a Tennessee policy).

The plaintiff counters that, although California, indeed, is the state in which the policy was issued as well as *one* of her residences, these factors are not determinative. To support this contention, she invokes four Louisiana state court cases in which Louisiana law was applied to foreign policies issued to non-Louisiana residents; two of these cases pre-date Champagne, while two others concern commercial auto policies. See Francis v. Travelers Ins. Co., 581 So. 2d 1036 (La. App. 1 Cir. 1991) (applying Louisiana law to UM claim filed by Louisiana residents who were guest passengers of a vehicle covered by a policy issued in Ohio to Ohio residents); Adams v. Thomason, 21,728 (La. App. 2 Cir. 3/1/00); 753 So. 2d 416 (applying Louisiana law to UM claim filed by Louisiana resident allegedly occupying a vehicle covered

18

by a policy issued in Wisconsin to a Wisconsin resident); <u>Dunlap v. Hartford Ins. Co.</u>, 04-0725 (La. App. 1 Cir. 3/24/05); 907 So. 2d 122, 126-27 (applying Louisiana law to UM claim filed by Louisiana resident under his Michigan employer's Michigan policy that "provided commercial coverage for a fleet of vehicles used nationwide"); <u>Boutte v. Fireman's Fund Cty. Mut. Ins. Co.</u>, (La. App. 3 Cir. 5/10/06), 930 So. 2d 305 (applying Louisiana law where accident victim was a Louisiana resident and tortfeasor's vehicle was covered by a commercial auto policy issued in Texas).

Ultimately, the Court finds that, under the facts of this case as they currently exist, 21st Century has not sustained its burden of establishing that California's policies would be most seriously impaired if its law were not applied. Although not addressed by either party, another factor relevant to the choice-of-loss determination is whether the plaintiff has received some compensation for her injuries. <u>See</u> <u>Walker v. State Farm Mut. Auto Ins. Co.</u>, 42,051 (La. App. 2 Cir. 4/4/07); 954 So. 2d 847, 853-54 ("We note, however, that Walker already settled with both the liability carrier and with Cleveland's UM carrier. At least one court has held that this circumstance mitigates Louisiana's interest in providing UM coverage for innocent accident victims.") (citing <u>Palm v. Stewart</u>, 03-0594 (La. App. 3 Cir. 11/5/03); 858 So. 2d 790); <u>Dickerson</u>, 2009 WL 117006, at *5 ("[A]pplication of Tennessee law will not seriously impair Louisiana's interest in

ensuring recovery for the accident victim, given Dickerson's receipt of $287,993 from Progressive.").

Moreover, central to the Abraham court's decision to apply Mississippi law to an UM claim filed by a dual Mississippi/Louisiana resident under a policy he obtained in Mississippi was the fact that Louisiana's policy interest in promoting the recovery of tort victims would not be impaired to the extent it was affected in Champagne. Abraham, 465 F.3d at 613-14. Specifically, the Abraham court reasoned:

> While the decision in Champagne left the plaintiff with no redress for his injuries, application of Mississippi law in this case only forecloses Abraham's ability to recover a statutory penalty and attorney's fees for his bad faith (since State Farm has already paid him the UM policy limit).

Id. at 613-14. Unlike in Abraham, where the insurance carrier had tendered the policy limits to the plaintiff, here, 21st Century has tendered no payment at all, such that Ms. Lewis has not been compensated whatsoever for her injuries. Moreover, application of California law would require her to submit to binding arbitration to resolve this claims dispute. And because more than one year has elapsed from the date of the accident, and Ms. Lewis has neither instituted arbitration proceedings against 21st Century, nor filed suit against the unidentified, uninsured motorist, 21st Century may take the position that coverage is barred on this basis

alone.[2]  Although this Court recognizes that the application of Louisiana law would result in the abrogation of a California contract, it also finds that applying California law could preclude an individual who resides, owns property, pays taxes, and votes in Louisiana from recovering for injuries sustained in an accident that occurred in Louisiana.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendant's motion for partial summary judgment that California law governs the plaintiff's uninsured motorist claim, such that the plaintiff's claims for statutory penalties and

---

[2] As previously noted, the 21st Century policy involved in this case draws upon language from the California Insurance Code but bars coverage where certain action is not taken within one year from the date of the accident.  This policy provides, in part:

> Under Coverage D [Damages for Bodily Injury Caused by Uninsured/Underinsured Motor Vehicles], **this policy does not apply unless within one year** from the date of the *accident* wherein *bodily injury* is sustained agreement as to the amount due under this part has been concluded or the *person* insured under this part or the legal representative of said *person* insured has formally instituted arbitration proceedings by notifying *us* in writing by certified mail, return receipt requested, or has commenced action for *bodily injury* in a court of competent jurisdiction against the uninsured motorist.  This exclusion does not apply to any loss involving an *underinsured motor vehicle*.

Emphasis added.

attorney's fees under Louisiana law must be dismissed with prejudice, is hereby DENIED.

New Orleans, Louisiana, February 6, 2019

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE